| | |
|---|---|
| FOX ROTHSCHILD LLP<br>Yann Geron<br>Nicole N. Santucci (Of Counsel)<br>100 Park Avenue, Suite 1500<br>New York, New York 10017<br>(212) 878-7900 | Hearing Date: March 20, 2012<br>Hearing Time: 10:00 a.m.<br><br>Objection Deadline: March 13, 2012 |

*Attorneys for Yann Geron, Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re                                            :        Chapter 7
                                                 :
THELEN LLP,                                      :        Case No. 09-15631 (ALG)
                                                 :
                Debtor.                          :
-------------------------------------------------------x

**TRUSTEE'S MOTION, PURSUANT TO BANKRUPTCY RULE 9019, FOR AN ORDER APPROVING SETTLEMENT AGREEMENT RESOLVING TRUSTEE'S CLAIMS ASSERTED AGAINST FORMER PARTNER OF THE DEBTOR**

TO THE HONORABLE ALLAN L. GROPPER, UNITED STATES BANKRUPTCY JUDGE:

Yann Geron (the "Trustee"), as chapter 7 trustee of the estate of Thelen LLP (the "Debtor"), the above-captioned debtor, as and for his application (the "Application") for entry of an order, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving a settlement agreement between the Trustee and Keith Slenkovich (the "Settling Partner"), upon information and belief, respectfully sets forth and represents:

**Jurisdiction**

1.      This Court has jurisdiction over this case and Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The predicate for the relief sought herein is Bankruptcy Rule 9019.

**Background**

a.   The Debtor's Operations

2.   On September 18, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York.  Yann Geron was appointed interim chapter 7 trustee of the Debtor's estate.  Mr. Geron has since qualified as permanent chapter 7 trustee and is currently serving in that capacity.

3.   Prior to the Petition Date, Thelen LLP, formerly known as Thelen Reid Brown Raysman & Steiner, operated largely as a bicoastal law firm with principal offices in New York and San Francisco, and other offices located in 8 U.S. cities, England and China.  At its peak, Thelen employed roughly 600 attorneys.  Thelen was founded in 1924 in San Francisco as Thelen, Marrin, Johnson & Bridges.  In June 1998, Thelen Marrin merged with New York-based Reid & Priest, a firm with approximately 160 attorneys.  On December 1, 2006, Thelen Reid & Priest merged with Brown Raysman Millstein Felder & Steiner, LLP, creating the bicoastal structure of the firm.  Thelen was ranked 70th in the National Law Journal's 2007 survey of the nation's largest firms.  Upon information and belief, a number of factors caused the firm's demise, including difficulties following the Brown Raysman merger, significant partner departures, and failed merger discussions.

4.   In October 2008, the Debtor formally voted to dissolve the partnership.  Thereafter, the Debtor began its wind-down process under the guidance of a dissolution committee.  Thelen's dissolution committee appears to have focused its efforts on collection of Thelen's accounts receivable, paying down its secured lines of credit with Citibank N.A., Thelen's principal lender, and transitioning client files, using a skeleton staff in a small portion

2

of Thelen's San Francisco offices. After some months in dissolution, it appears that collections slowed and the Debtor's pared-down operating costs became unsustainable under the Debtor's arrangement with Citibank. As a result, the Debtor filed the instant bankruptcy proceeding.

b.   The Claims against the Former Partners

5.   The Trustee's investigation into the Debtor's pre-petition financial affairs revealed that the estate possesses, among other claims, certain contract claims against most or all of the Debtor's former equity partners arising primarily from compensation they received in 2007 and 2008, as well as their failure to meet capital requirements (the "Claims").

c.   The Previously Approved Settlements

6.   By prior motion, dated September 27, 2011, the Trustee sought approval of settlement agreements with a group of 93 dissolution partners[1], who were collectively represented by Klestadt & Winters LLP (the "K&W Settling Partners"). The dissolution partners are partners that remained at the Debtor after it formally voted to dissolve the partnership.

7.   The Trustee settled the Claims against the K&W Settling Partners for approximately $4,980,000[2], or approximately 70% of the face value (prior to set-offs and other credits) of the Claims against the K&W Settling Partners.

8.   The agreements with the K&W Settling Partners contain a most favored terms provision, which generally provides that the Trustee, in the exercise of his business judgment upon approval by the Bankruptcy Court, may enter into settlement agreements with other former partners of the Debtor that he, in the exercise of his fiduciary duty, believes are in

---

[1]   The number of the K&W Settling Partners was ultimately reduced to 89 as a result of *de minimus* claims against certain partners in this group.

[2]   This amount was subject to a 5% early payment discount for partners who paid the full settlement amount within two business days after the order approving the settlements became a final and non-appealable order.

the best interests of the Debtor, its estate and creditors. However, in the event the Trustee determines to proceed with a settlement with any other partner or former partner of the Debtor on terms that are materially less favorable to the Trustee, viewed in the totality of the circumstances, than those contained in the agreements with the K&W Settling Partners, then the relevant provisions of the agreements with the K&W Settling Partners shall be appropriately conformed and/or modified to yield the same overall economic results, and the K&W Settling Partners shall be entitled to an appropriate super-priority administrative claim against the Debtor's estate.

9. Additionally, the agreements with the K&W Settling Partners contain broad release provisions which provide that: (i) the K&W Settling Partners will be released from any and all estate claims (including related third-party claims), with the exception of the Jewel Claims[3], and (ii) that the K&W Settling Partners will release the Trustee, the Debtor and its estate, from any and all claims, except that the parties reserve their rights with respect to proofs of claim previously filed by the K&W Settling Partners for any amounts or obligations other than claims seeking the return of capital.

10. By order dated November 16, 2011, the Court approved the contemplated settlements with the K&W Settling Partners (the "<u>K&W Approval Order</u>"). The K&W Approval Order fine-tuned certain language in the settlement agreements relating to the most favored terms provision and the scope of the third-party releases in order to address the concerns raised by several objecting parties.

11. Using the settlements with the K&W Settling Partners as a blueprint, the Trustee negotiated similar settlements with two additional partner groups. The first partner group was comprised of 21 dissolution partners who were similarly-situated to the K&W Settling

---

[3] The general terms of the settlement provide that the Trustee may not seek monetary or other recovery from the K&W Settling Partners on account of the Jewel Claims.

4

Partners ("Partner Group One"). The second partner group consisted of five dissolution partners, who were former members of Brown Raysman, and whose purported offsets are somewhat distinct from all but a handful or less of the K&W Settling Partners ("Partner Group Two").

12. By prior motion, dated November 22, 2011, the Trustee sought approval of the settlements with Partner Group One and Partner Group Two.

13. The Trustee settled the Claims against Partner Group One for approximately $618,000[4], or approximately 65% of the face value (prior to set-offs and other credits) of the Claims against Partner Group One.

14. The Trustee settled the Claims against Partner Group Two for approximately $375,000[5], or approximately 73.5% of the face value (prior to set-offs and other credits) of the Claims against Partner Group Two. Partner Group Two was allowed a certain contractual offset pursuant to their compensation agreements with Thelen which was unique to this partner group (as distinguished from the K&W Settling Partners), and which was allowed in conjunction with a further reduced unit value from the value given to the K&W Settling Partners.

15. The most significant differences between the settlement with Partner Group One and the settlement with the K&W Settling Partners are as follows: (i) the third-party release language was modified to be consistent with the scope of the releases granted by the K&W Approval Order, (ii) the confidentiality provision was modified to allow the Trustee to disseminate redacted versions of the settlement agreements without reference to individual amounts paid by any settling partner[6], and (iii) the most favored terms provision was eliminated

---

[4]   See footnote 3.

[5]   See footnote 3.

[6]   The settlement agreements with the K&W Partner Group provided that they were to be strictly confidential and that the Trustee would seek authorization to file the agreements under seal.

5

from the settlement agreements with this partner group. The remaining settlement terms are largely unchanged.

16. The most significant differences between the settlement with Partner Group Two and the settlement with the K&W Settling Partners are as follows: (i) Partner Group Two was entitled to a contractual offset that was largely unique to that partner group, (ii) the compromised point value was decreased from $9,300 per point (as negotiated with the K&W Settling Partners) to $9,100 per point, (iii) the third-party release language was modified to be consistent with the scope of the releases granted by the K&W Approval Order, (iv) the confidentiality provision was been modified to allow the Trustee to disseminate redacted versions of the settlement agreements without reference to individual amounts paid by any settling partner[7], and (v) the most favored terms provision was eliminated from the settlement agreements with this partner group. The remaining settlement terms are largely unchanged.

17. By orders dated December 14, 2011, the Court approved the contemplated settlements with Partner Group One and Partner Group Two (the "<u>Settlement Approval Orders</u>"). The Settlement Approval Orders contain virtually the same language as the K&W Approval Order.

## Relief Requested

a. <u>Summary of Settlement</u>

18. The Trustee respectfully requests that this Court approve the settlement agreement between the Trustee and the Settling Partner, which is annexed as <u>Exhibit A</u>. In order to preserve the Settling Partner's privacy concerns, a confidentiality provision has been included in the settlement agreement. The confidentiality provision authorizes the Trustee to disseminate

---

[7] See footnote 6.

6

a redacted form of the agreement without any reference to the amount paid by the Settling Partner[8].

19. The settlement agreement is identical to the settlement agreement entered into between the Trustee and the members of Partner Group One.[9] By way of summary, the settlement agreement provides for the following:[10]

> The Settlement Amount: As part of the overall settlement negotiations, the Trustee and the Settling Partner exchanged relevant information regarding the Claims, as well as potential defenses and offsets which may be asserted in response to the Claims. As a result of settlement negotiations, the Trustee has agreed on a compromised amount to be paid by the Settling Partner, which is approximately 68.5% of the Claims asserted against the Settling Partner.

> Releases and Bar Order – The Trustee and the Settling Partner will exchange releases which provide that (i) the Settling Partner will be released from any and all Claims held by the Trustee, the Debtor or its estate (including a bar from commencing or continuing related third party claims), with the exception of any claims which arise from or under the "unfinished business doctrine" analyzed in Jewel v. Boxer[11], and (ii) that the Settling Partner will release the Trustee, the Debtor and its estate, from corresponding claims, except that the Settling Partner reserves his rights with respect to any proof of claim previously filed for any amounts or obligations other than claims seeking a return of capital.

b.  The Settlement is Fair and Reasonable

18. The contemplated settlement compromises and resolves the Trustee's Claims against the Settling Partner along lines that are fair and reasonable. This Court

---

[8]   A complete copy of the settlement agreement has been provided to the Court for consideration. However, in order to preserve the confidentiality provision, a redacted form of the settlement agreement is being made publicly available and upon request by interested parties.

[9]   The Settling Partner intended to be a member of Partner Group One but was unable to conclude substantive settlement negotiations with the Trustee's counsel until recently.

[10]  Reference is made to the settlement agreement annexed as Exhibit A, which contains the actual and detailed terms of the settlement. To the extent there is any express or implied conflict between the terms of the agreement and the description contained herein, the terms of the agreement shall control.

[11]  The terms of the settlement significantly limit the Trustee's recourse against the Settling Partners arising from the Jewel claims by virtue of covenants made under the same by the Trustee.

7

NY1 562157v1 02/14/12

previously concluded that the settlements of the Trustee's claims against the K&W Settling Partners, Partner Group One and Partner Group Two were reasonable and in the best interests of the Debtor, its estate and creditors. The agreements with the K&W Settling Partners formed the blueprint for settlements with other dissolution partners, including the Settling Partner. Also, as detailed above, the settlement with the Settling Partner is identical to the previously approved settlements with Partner Group One.

19. Trustee has concluded that the contemplated settlement with the Settling Partner represents a sound exercise of his business judgment and is in the best interest of the Debtor, its estate and creditors. The settlement amount was the result of protracted arms-length negotiations between the parties, who are sophisticated lawyers. Additionally, the Trustee believes that the settlement amount reflects the fair value of the various claims, defenses and offsets, while also avoiding the costs, risks and delays associated with litigation.

22. For the foregoing reasons, the Trustee respectfully submits that the contemplated settlement represents a better economic recovery for the estate than any other alternative and that it should be approved.

c.   Applicable Legal Standards for Approval of the Settlements

23. Bankruptcy Rule 9019 provides that "[o]n a motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). In ruling on a motion pursuant to Bankruptcy Rule 9019(a), the court must find that the proposed settlement is fair and equitable and is in the best interests of the estate. Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414 (1968). Fischer v. Pereira (In re 47-49 Charles Street, Inc.), 209 B.R. 618, 620 (S.D.N.Y. 1997);

In re Ionosphere Clubs, Inc., 156 B.R. 414 (S.D.N.Y. 1993), aff'd 17 F.3d 600 (2d Cir. 1994); In re Fugazy, 150 B.R. 103 (Bankr. S.D.N.Y. 1993).

24. In order to reach such a decision, the Court must be apprised "of all facts necessary for an intelligent and objective opinion" of whether the claim will be successful, the likely expense, length and the degree of complexity of the litigation, the potential difficulties of collecting on a judgment "and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." TMT Trailer Ferry, 390 U.S. at 424-425.

25. To constitute a fair and equitable compromise or settlement, the Court must find that the settlement does not "fall below the lowest level of reasonableness." Cosoff v. Rodman (In re W.T. Grant Co)., 699 F.2d 599, 608 (2d Cir. 1983); In re Drexel Burnham Lambert Group, Inc., 138 B.R. 723, 758-59 (Bankr. S.D.N.Y. 1992); In re International Distribution Centers, Inc., 103 B.R. 420, 423 (Bankr. S.D.N.Y. 1989).

26. The Court should also consider the fair and reasonable course of action for the Debtor's estate, with the limited available assets, giving consideration to the interests of creditors and the avoidance of burdening the estate with undue waste or needless or fruitless litigation. In re Del Grosso, 106 B.R. 165, 167-168 (Bankr. N.D. Ill. 1989) (citation omitted). See also In re Culmtech, Ltd., 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990); In re Lawrence & Erausguin, Inc., 124 B.R. 37, 38 (Bankr. N.D. Ohio 1990); In re Bell & Beckwith, 93 B.R. 569, 574-75 (Bankr. N.D. Ohio 1988).

27. The Court is not required conclusively to determine the merits of a claim subject to compromise or to find that a proposed settlement constitutes the best results obtainable to ensure that the settlement reaches the threshold of reasonableness. Instead, the Court should "canvass the issues" to determine whether the proposed settlement is fair and equitable, is in the

9

best interests of the estate and otherwise does not fall outside the range of reasonableness. In re Apex Oil Co., 92 B.R. 847, 866-67 (Bankr. E.D. Mo. 1988).

28.    In this case, the proposed settlement is fair, equitable, in the best interests of the Debtor's estate, and well within the range of reasonableness. The proposed settlement is entirely consistent with the previously approved settlements with the K&W Settling Partners and is identical to the previously approved settlements with Partner Group One. Additionally, the proposed settlement promptly resolves all of the Trustee's Claims against the Settling Partner and provides the Debtor's estate with a significant cash payment.

29.    The amount of funds to be realized by the Debtor's estate from the Settling Partner reflects the best possible outcome based upon the information available to the Trustee after an extensive investigation. The settlement also avoids the costs, risks and delays associated with litigation.

d.    Applicable Legal Standards for Granting Third Party Releases

30.    As detailed above, the settlement contemplates that the Settling Partner will be released from any and all estate claims, including certain third parties, and requires the Trustee to seek an order permanently barring any third party from asserting the following claims against the Settling Partner:

- any or all indebtedness, obligation, or liability of or relating to the Debtor or any affiliated entity (including predecessor firms Thelen, Marrin, Johnson & Bridges, LLP, Reid & Priest LLP, Thelen Reid & Priest LLP, Brown Raysman Millstein Felder & Steiner LLP, and Thelen Reid Brown Raysman & Steiner, LLP) (collectively, the "Thelen Entities") or arising from the business or operations of one or more Thelen Entities or other claims or rights against any of the Thelen Entities, whether asserted or not (including claims or rights of contribution or indemnification by other partners or former partners of the Debtor or the Thelen Entities);

- the Settling Partner's status as a partner or employee of any of the Thelen Entities and such Settling Partner's withdrawal and departure from the Debtor; and

10

NY1 562157v1 02/14/12

- the conduct of the affairs of any of the Thelen Entities, whether before or after the commencement of the Bankruptcy Case.

31.  The relief afforded by the requested bar order is necessary for a complete settlement of the claims between the Trustee and the Settling Partner. Without the bar order, the Settling Partner remains exposed to third-party claims which may be asserted in connection with the former partner's conduct that was taken into account in the context of the contemplated settlement. Specifically, the proposed bar order is limited to those third parties who are creditors of, or who have otherwise appeared as a party in interest in, this chapter 7 case (collectively, the "Case Parties").

32.  Section 105(a) of the Bankruptcy Code authorizes this Court "to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [Title 11]".

33.  Additionally, the proposed bar order is well within the Court's *in rem* jurisdiction over the estate of the Debtor, *see In re W.T. Grant Co.*, 20 B.R. 186, 189 (S.D.N.Y. 1982), and indeed reflects nothing more than the fact that transfers from the Debtor to the Settling Partner were transfers of the Debtor's interests in estate property. It thus bars persons who have availed themselves of this Court in connection with the Debtor's bankruptcy case from asserting similar claims against the Settling Partner relating to the same transactions that are being resolved herein.

34.  This Court previously approved the contemplated third-party releases in connection with the settlements with the K&W Settling Partners, Partner Group One and Partner Group Two. The third-party release language in the agreements is entirely consistent with the Court's prior orders. Specifically, the contemplated third-party releases do not release or enjoin any claim or cause of action that (i) is not derivative of a Released Claim or which is not

11

NY1 562157v1 02/14/12

otherwise property of the Debtor's estate; (ii) seeks to recover for a particularized injury to the Case Party that is distinct from any general injury suffered by all creditors of the Debtor; and (iii) is based upon the breach of an independent legal duty owed by any of the Settling Partner Parties to the Case Party.

35. Because the proposed third-party releases have already been approved by this Court in conjunction with the K&W Approval Order and the Settlement Approval Orders, the Trustee respectfully submits that, to the extent the settlement agreement is approved, cause exists to afford this same relief to the Settling Partner.

### Notice and Procedure

36. Pursuant to the order establishing procedures in connection with partner claims, dated December 14, 2011, complete copies of this Application have been served upon counsel to Citibank, the Settling Partner, all parties requesting notice, and the Office of the United States Trustee.

37. This Application includes citations to the applicable rules and statutory authorities upon which the relief requested is predicated. Accordingly, the Trustee respectfully submits that this Application satisfies the requirements of Local Bankruptcy Rule 9013-1(a).

### No Prior Relief

38. Except as detailed herein, no other application for relief sought herein has been made to this or any other Court.

**WHEREFORE**, the Trustee respectfully requests that the Court enter an order, substantially in the forms annexed as <u>Exhibit B</u>, approving the settlement agreement with the Settling Partner and granting him such other and further relief as is just.

| | |
|---|---|
| Dated: New York, New York<br>February 15, 2012 | FOX ROTHSCHILD LLP<br>Attorneys for Yann Geron, Chapter 7 Trustee |
| | By: */s/ Yann Geron*<br>Yann Geron<br>Nicole N. Santucci (Of Counsel)<br>100 Park Avenue, Suite 1500<br>New York, New York 10017<br>(212) 878-7900 |

NY1 562157v1 02/14/12